■ Shalom Toy, Inc., et al., Respondents, v Each and Every One of the Members of the New York Property Insurance Underwriting Association, et al., Respondents. Matarazzo Blumberg & Associates, P. C., Nonparty Appellant. [658 NYS2d 1] —Judgment, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered August 13, 1996, which denied nonparty appellant law firm's application for a declaration that it is entitled to a contingency fee in the amount of $50,983.07 representing one-third of the insurance settlement between plaintiffs and defendants, and for other relief, unanimously modified, on the law and the facts, and the motion granted only to the extent of directing a hearing on the issue of appellant's discharge for cause, and if said discharge is found to be without cause, for a determination as to the reasonable value of its services for which it has not previously been compensated, and otherwise affirmed, without costs.

This action arose as a result of an insurance coverage dispute between plaintiffs-insureds and defendant-insurer New York Property Insurance Underwriting Association ("NYPIUA"). After a fire at plaintiffs' premises on May 20, 1994, plaintiffs filed an insurance claim with defendant, which declined coverage. Plaintiffs hired appellant Matarazzo Blumberg & Associates, P. C. ("MBA") to appeal that decision, and, ultimately, to obtain coverage on plaintiffs' behalf. The retainer agreement provided that plaintiffs would pay MBA for legal services at a rate of $200 per hour on a non-contingent basis during the administrative appeals process, and further stated that "[i]f any court proceeding is *necessary* 33$^{1}$/₃% of any recovery on account of loss." (Emphasis added.)

While plaintiffs' appeal was still pending before the Superintendent of Insurance, MBA's counsel wrote to NYPIUA's counsel informing him that by declining coverage, NYPIUA had waived the performance of any conditions required of the plaintiffs. She further wrote that any attempt to enforce such conditions would violate the "Unfair Claims Settlement Practices Act," and it was her present intention to immediately commence an action against NYPIUA under the Act. MBA's counsel served and filed a summons and complaint on NYPIUA on or about November 28, 1994.

Meanwhile, however, settlement negotiations had begun between plaintiffs and NYPIUA, due in part to the efforts of a public adjuster. Thereafter, plaintiffs retained separate

counsel, who advised MBA that plaintiffs had paid MBA the hourly fees as required by the retainer agreement, but that the contingency fee had not been earned because litigation was not necessary. MBA responded by detailing their efforts made on plaintiffs' behalf, and maintained that they were entitled to the contingency fee because as a result of their efforts and, specifically, their commencement of an action at law, NYPIUA agreed to withdraw its defense of lack of coverage and was moved to settlement negotiations. On July 21, 1995, plaintiffs' new counsel faxed MBA a letter discharging MBA "for cause."

MBA moved by order to show cause for an immediate hearing on the issue of discharge for cause, and its rights to the contingency fee and a retaining lien. On September 29, 1995, the parties entered into a "so ordered" stipulation providing for substitution of counsel for plaintiffs, discontinuing the underlying insurance litigation, and the placement of one-third of the settlement proceeds in escrow. MBA then sought its declaration that it is entitled to one-third of the settlement proceeds, or $50,983.07.

The IAS Court denied MBA's motion, finding that the complaint filed by MBA in the underlying action was premature and subject to dismissal because of the pending appeal before the Superintendent of Insurance. It also found that the plaintiffs lacked standing to bring a private cause of action under article 26 of the Insurance Law. The court concluded that the complaint was a "legal nullity" that did not entitle MBA to recover the contingency fee under the retainer agreement.

On appeal, MBA claims that it is entitled to its contingency fee because its commencement of the action against NYPIUA was necessary to achieve the settlement. In the alternative, MBA claims that it is entitled to payment for the reasonable value of its services rendered in connection with the settlement. Plaintiffs respond that this litigation was unnecessary and was commenced solely to trigger the contingency fee, and that MBA is not entitled to any lien or quantum meruit recovery because it was discharged for cause.

We agree with the IAS Court that MBA has failed to demonstrate its contractual right to the one-third contingency fee. While the commencement of the suit may have accelerated settlement negotiations, it is unclear whether it was "necessary" given the pending administrative appeal and plaintiffs' professed desire to avoid litigation. A discharged attorney may receive a fee based on the percentage of recovery *only* where the parties agree to it (*see, Matter of Cohen v Grainger, Tesori-*

*ero & Bell*, 81 NY2d 655, 658; *Reubenbaum v B. & H. Express*, 6 AD2d 47, 48), and here, the parties plainly disagree as to whether the condition precedent to recovery of the contingency fee, viz., that a "court proceeding [was] necessary," had been met. The retainer agreement should be construed against MBA, the party who drafted it (*see, Jacobson v Sassower*, 66 NY2d 991, 993).

However, that is not to say that MBA forfeited its available common-law and statutory remedies. When a client discharges an attorney without cause, the attorney is entitled to recover in quantum meruit the fair and reasonable value of the services rendered, whether that be more or less than the amount provided for in the retainer agreement (*Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 457-458). However, "[w]here the discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement" (*Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38, 44; *Teichner v W & J Holsteins*, 64 NY2d 977, 979).

Additionally, the Court of Appeals has recently ruled that an attorney's right to enforce a charging lien under Judiciary Law § 475 is not forfeited in the "myriad of cases in which the attorney's representation is discontinued by mutual consent for reasons not rising to the level of misconduct or 'just cause' on either side" (*Klein v Eubank*, 87 NY2d 459, 463). Thus, unless the representation terminates as a result of attorney misconduct, discharge for cause, or unjustified abandonment by the attorney, the attorney's right to compensation is preserved (*Klein v Eubank, supra*, at 464).

Neither party has established whether MBA's discharge was with or without cause, and the IAS Court did not determine the issue. Accordingly, since MBA's right to a quantum meruit recovery, and its right to a charging lien under Judiciary Law § 475, are dependent on whether the termination of the attorney-client relationship was justified (*Campagnola v Mulholland, Minion & Roe, supra*; *Artache v Goldin*, 173 AD2d 667; *Flores v Barricella*, 123 AD2d 600, *lv denied* 69 NY2d 602), we remand for a hearing to resolve that question (*Klein v Eubank, supra*, at 464). In the event the court concludes that MBA's discharge was not justified by cause, it should make a factual finding of the reasonable value of MBA's services, if any, for which it has not been previously compensated. Concur—Rosenberger, J. P., Ellerin, Tom and Mazzarelli, JJ.