*593 OPINION OF THE COURT
Virginia E. Yancey, J.
By order to show cause signed on October 17, 1996,[1] the law firm of R. & R. moved to withdraw as counsel to the defendant C. A. C. The law firm also moved for a retaining lien for the legal services provided to the defendant. The defendant retained new counsel who appeared before the Honorable William Rigler on November 18, 1996, the date the motion had been scheduled for argument. N. S., new counsel for the defendant, and R. & R. reached a proposed settlement that day but the defendant left the courthouse and later refused to sign the stipulation of settlement. Mr. S.’s request for additional time to respond to the motion for a retaining lien was denied. On December 5, 1996, Justice Rigler issued an order permitting R. & R. to withdraw as attorneys for the defendant. Pending resolution of the issue of counsel fees, he denied the application for a retaining lien and granted the movant a charging lien in the amount of $35,273.95 against any funds due the defendant by her former husband K. C. Justice Rigler directed a hearing to be held on January 23, 1997 to fix the actual amount of counsel fees and modify the order accordingly. On January 23, 1997 the matter was referred to this court for a hearing.
BACKGROUND OF THIS MATTER
The defendant retained R. & R. in March 1995 to litigate the matrimonial action pending before the Honorable Martin Schneier. Trial began in July 1995 and a judgment was signed on November 16, 1995. R. & R. filed a motion to hold the plaintiff in contempt because he had failed to comply with the judgment of divorce. The Honorable Ira B. Harkavy issued an order on January 31, 1996[2] and a modified order on February 1, 1996 finding the plaintiff in contempt. Under the order issued on the contempt motion by Acting Justice Harkavy on February 1, 1996, Mr. C. owed $166,047 to the defendant for arrears in maintenance, rent and equitable distribution and $10,000 to R. & R. for counsel fees and disbursements awarded for the enforcement proceeding. Justice Harkavy ordered that payment of counsel fees and disbursements be made "no later than ten days from the date of entry of the order.” He signed a warrant for the arrest of Mr. C. To avoid incarceration, in *594 April 1996 the plaintiff paid the unallocated sum of $50,000 and $7,000 for arrears in maintenance.
On March 3, 1997 the hearing commenced to determine the amount of legal fees owed by the defendant. Counsel for the defendant in affidavits, his affirmation and a prehearing memorandum of law, raised the following issues and defenses: (a) that the defendant had discharged R. & R. for cause and therefore did not owe any legal fees, (b) that R. & R. should refund the $35,000 the firm had deducted from the $50,000 paid by the plaintiff K. C. and also return the $5,000 the defendant paid as a retainer, (c) that R. & R. could not collect any fees due to the firm’s failure to comply with the matrimonial rules, and (d) that R. & R. violated the Disciplinary Rules and should not be allowed to receive any additional fees. Movant’s prehearing memorandum of law objected to the assertion of these defenses, arguing that defendant had defaulted on the motion before Justice Rigler and should not be permitted to raise these untimely objections. Pursuant to the December 5, 1996 order of Justice Rigler, which directed a full hearing, the court allowed the defendant to raise these substantive issues.
On March 3, March *10, March 11, April 7, and April 8, 1997 the court heard testimony from various witnesses including E. S., an associate with the firm of R. & R., L. R., a partner in the same firm, J. P., the defendant’s appellate attorney, D. Z., L. F., defendant C. C. and K. C., the defendant’s former husband. The court admitted into evidence extensive documentary evidence on the issue of whether R. & R. is entitled to additional counsel fees in the sum of $35,273.95. Decision was reserved on April 8, 1997, the final day of the hearing.
ISSUES RAISED BY THE MOTION
A. The Retainer Agreement and Client’s Statement of Rights and Responsibilities
On direct examination, L. R. testified he first met his former client in December 1994 but she did not retain him at that time. In rebuttal testimony one month later, he testified that the defendant had retained him on or before December 14, 1994. When asked whether an unsigned retainer agreement dated December 14, 1994[3] would be the operative agreement between the defendant and his firm he indicated that it would be. Mr. S., an associate of R. & R., testified that in December *595 1994 he did not see a retainer agreement and to his knowledge the defendant did not sign one at that time.
In his direct testimony, Mr. R. stated that in March 1995, with the trial marked final against the defendant for the next day, she returned to the firm and he prepared a "letter agreement” for the defendant and a guarantor to sign. Mr. R. recalled the provisions included a retainer of $10,000 and monthly billing with payment expected within 30 days. The guarantor provided only $4,000 of the $10,000 as a retainer, which R. & R. accepted.[4] Mr. R. did not produce the original or a copy of the alleged "letter agreement”, claiming it must have been included in the voluminous files he eventually returned to the defendant. He admitted he never personally filed a copy of the alleged "letter agreement” with the court but stated he does not know whether someone from his office might have filed the agreement. L. R. testified that the defendant did sign a statement of client’s rights and responsibilities before the trial with Justice Schneier began.
On direct examination C. A. C. testified she discussed a retainer with Mr. R. but told him she could not afford to pay $10,000. He gave her a retainer agreement to sign in December 1994 but she never signed it. She stated she never signed any written retainer agreement with R. & R. nor did she ever see or sign a statement of client’s rights and responsibilities. The defendant paid only $5,000 in March 1995 rather than $10,000 and claimed she never had an agreement as to future payments for legal services.
B. The Fee Dispute and Cause for Discharge
Mr. R. testified that defendant regularly received bills for legal services from his firm and never objected to them.[5] When he deposited the $57,000 in funds which stayed the order of commitment of Mr. C. pursuant to Judge Harkavay’s order, he attempted to contact his client to make a distribution. When he finally reached the defendant, he told her she should come into the office. In the telephone conversation, he and the defendant decided he should withdraw $25,000 for payment of her outstanding bills for legal fees; Mr. R. testified he never had prior written authorization for the removal of those funds. Mr. *596 R. testified that before the face-to-face meeting held on May 16, 1996 he spoke with the defendant and she told the firm to take one half of the funds and they would discuss allocation of the remainder when she came to the office for their meeting. Copies of deposit slips from the escrow account[6] show a deposit of $50,000 on April 22, 1996; Mr. R. testified he withdrew the $25,000 on May 6, 1996.[7] However, proof was presented that on April 23, 1996 a transfer of $25,000 occurred from the escrow account to the operating bank account of R. & R. The evidence further shows that at the meeting eventually held on May 16, 1996 checks were issued to J. P. for $12,500 and to the defendant for $9,500; Mr. R. deposited $7,000 into the escrow account and on May 21, 1996 wrote a check for an additional $10,000 to his law firm.
J. P., an attorney retained by the defendant to prosecute an appeal from the judgment of divorce, testified he attended the meeting held at the office of R. & R. on May 16, 1996. Mr. P. stated he did not know whether the defendant objected to the allocation of funds disbursed at the meeting or to the earlier withdrawal of $25,000 by R. & R.; he did not recall any objections from her. He stated that as of May 16, 1996 the defendant did not appear to have removed R. & R. as her counsel.
E. S. testified that he and another associate at R. & R. acted as trial counsel for the defendant. He said the defendant received numerous bills for legal services, delivered in person and through the mail. Mr. S. testified that the defendant did not express dissatisfaction with the representation provided or discharge R. & R. at any time before October 17, 1996. He stated that defendant owed $35,273.95 for legal services which totaled $75,273.95 from March 1995 through July 29, 1996 and that any amounts billed after that time concerned the motion to be relieved as counsel and to collect unpaid fees.[8]
During the case the defendant called D. Z., who testified that after delivery of Mr. C.’s check for $50,000 to R. & R. he suggested to the defendant that she not go to Mr. R.’s law firm since Mr. R. would take most of the money. When they did *597 meet with Mr. R on May 16, 1996, Mr. Z. testified that distribution of the $50,000 and an additional $7,000 was not really discussed since Mr. R. had already taken $25,000 for himself. Mr. R. wrote out a check to R. & R. for $10,000 and to J. P. for $12,500. The defendant trembled and looked very upset about the distribution. Mr. Z. testified he objected to the amount received by Mr. R. The defendant explained she did not object to the distribution at the meeting because Mr. R. told her she would be receiving $122,000 within 30 days. On cross-examination Mr. Z. stated that the defendant did object to the allocation of funds on May 16, 1996; she told Mr. R. she was "not interested in $50,000.00 but interested in $177,000.00.”[9]
The defendant testified that between March 1, 1996 and April 23, 1996 she never agreed that R. & R. should be paid from the monies collected from Mr. C. She testified he never asked her permission to take funds and never told her that he intended to withdraw them. She stated she learned he had received $50,000 from her ex-husband’s attorney in a letter Mr. R. mailed to her. The defendant testified she "was in shock” at the May 16, 1996 meeting when she expected to collect a check for $50,000. She arrived to discover that the checks already had been cut by Mr. R., including the check payable to Mr. P., her appellate attorney, which payment she testified she never consented to. She received only $2,500 from the $50,000 and the $7,000 in retroactive maintenance for a total of $9,500. The defendant testified Mr. R. had taken the $25,000 before the meeting on May 16, 1996 and she did not see any purpose in telling him not to take the money. He told her she would receive the balance of the $177,000 owed by her former husband within a few days.
Additional lengthy testimony was elicited upon defendant’s claim that R. & R. wrongfully retained maintenance payments that were forwarded to them for transmission to her.[10] After much ado it became obvious that the difference between the amount sent to defendant and that owed was minimal and due in part to a legitimate mistake and in part to the fact that R. & R. did not receive several checks claimed to have been mailed by Mr. C. This matter was resolved in open court and defendant has received all of the maintenance payments to which she was entitled.
*598 DISCUSSION
Although raised at the hearing, in the absence of an affirmative motion or cross motion from the defendant, this court has not considered or decided whether the defendant is entitled to a return of the $40,000 or some part of it already paid to R. & R. for legal fees (Hom v Hom, 210 AD2d 296 [2d Dept 1994]). The defendant is permitted to attempt to recover counsel fees already paid through a plenary action or arbitration. Under the Rules of the Chief Administrator of the Courts (22 NYCRR part 136), arbitration is mandatory in a dispute over fees if requested by the client or a former client (McMahon v Evans, 169 Misc 2d 509 [Sup Ct, Broome County 1996]).
The movant and defendant stipulated that although R. & R. received $35,000 from the funds paid by Mr. C. to avoid immediate incarceration, that $35,000 did not include the award of counsel fees granted by Acting Justice Harkavy for $10,000. R. & R. is owed these fees through the order of another Judge of this court for the enforcement of the judgment of divorce and is entitled to receive that amount. "When $10,000 is deducted from the $35,273.95 claimed by the movant the amount in dispute for decision by this court is $25,273.95.
The question this court must decide is the amount of money, if any, owed R. & R. pursuant to the charging lien granted by Justice Rigler. The charging lien, a common-law right expanded through enactment of Judiciary Law §§ 475 and 475-a, permits an attorney to assert a claim for payment of legal fees from a fund created through the attorney’s effort. (See, Freed, Brandes and Weidman, Attorneys’ Liens, NYLJ, June 25, 1991, at 3, col 1.) Although the representation provided by R. & R. did result in a judgment granting equitable distribution, payment of rent and maintenance[11] to the defendant, the funds payable under this judgment may not be the basis for the award of a charging lien because movant failed to comply with numerous mandatory requirements imposed by the matrimonial rules.[12] A failure to follow the rules in several critical respects precludes *599 granting the movant’s request for $25,273.95 to be paid from the proceeds held by plaintiff’s attorney. As the decision is based on this rationale the court is not addressing the claim that attorneys’ fees need not be paid because the defendant discharged R. & R. for cause.
R. & R. argues that because the C. matrimonial action was commenced before November 30, 1993, the effective date of the matrimonial rules, these rules do not apply to the firm’s representation of the defendant. The operative language, however, provides that the rules are applicable "where representation has commenced on or after November 30, 1993, to all attorneys who undertake to represent a client in a claim, action or proceeding, or preliminary to the filing of a claim, action or proceeding, in either Supreme Court or Family Court, or in any court of appellate jurisdiction, for divorce, separation, annulment, custody, visitation, maintenance, child support, alimony, or to enforce or modify a judgment or order in connection with any such claims, actions or proceedings.” (22 NYCRR 136.1.) In March 1995 R. & R. agreed to represent the defendant in her matrimonial action in the Supreme Court. The firm’s representation of the defendant began more than a year after the effective date of the rules, and certainly falls within the ambit of these rules.[13]
Additionally, the movant R. & R. did not comply with the requirement to notify the defendant of her right to request arbitration of a fee dispute (22 NYCRR 136.5). The matrimonial rules provide for arbitration of disputes involving an attorney’s fee at the client’s election (22 NYCRR 136.2, 1400.7). The Code of Professional Responsibility requires that in domestic relations matters to which 22 NYCRR part 1400 is applicable, "a lawyer shall resolve fee disputes by arbitration at the election of thé client” (DR 2-106 [E] [22 NYCRR 1200.11 (e)]). Once the defendant questioned Mr. R.’s entitlement to further legal fees, which occurred no later than November 18, 1996,[14] he should have served the defendant with notice in writing of her right to elect arbitration (22 NYCRR 136.5). As discussed in L.H. v V.W. (171 Misc 2d 120 [Civ Ct, Bronx County 1996]), an attorney may not attempt to collect fees without notifying *600 the client of the right to request arbitration. In the absence of compliance with the Code of Professional Responsibility, a charging lien will not be granted (see, Matter of Cooperman, 83 NY2d 465 [1994]). In Matter of Cooperman (supra) the Court of Appeals held that an attorney may not collect a fee barred by the public policy expressed in the Code of Professional Responsibility. This court finds the reasoning of the court in L.H. v V. W. to be persuasive and holds that if a fee dispute exists, a notice pursuant to 22 NYCRR 136.5 must be given to the client and that such notice is a condition precedent to the collection of attorneys’ fees, whether the attempted collection is through a plenary action[15] or a motion. This does not mean necessarily that an attorney must serve notice on the client before filing a motion to withdraw and for a retaining lien or for a charging lien pursuant to Judiciary Law § 475 or § 475-a, but once the attorney becomes aware that a client disagrees with the fees charged it is incumbent upon the attorney to comply, with the rule and serve a notice of arbitration.
The absence of an executed copy of a retainer agreement in and of itself is not a bar to the granting of a motion for a charging lien. However, the movant did not prove the existence of such a retainer agreement signed by the defendant. The argument advanced by movant that return of numerous thick files to defendant must have included the retainer agreement is unavailing. 22 NYCRR 1200.11 (c) (2) (ii)[16] specifically requires proof of a retainer agreement before action may be taken to collect a fee. A search of the files of the County Clerk in the present case shows that movant has never complied with 22 NYCRR 202.16 (c) (1) and 1400.3 by filing a copy of the retainer agreement with the Matrimonial Term of the Supreme Court. (See, Forbes v. Forbes, NYLJ, Feb. 26, 1997, at 26, col l [Sup Ct, NY County].) If a substitution of counsel occurs after the net worth statement is filed, the rules mandate that a copy of the retainer agreement be filed within 10 days (22 NYCRR 202.16 [c] [1]; 1400.3). A copy of the retainer agreement and other documents in a client’s file not relevant to the present discussion must be maintained for seven years after conclusion of an attorney’s representation of the client (22 NYCRR 1200.46 [d] [3]).[17] Nor can R. & R. demonstrate that defendant ever received a statement of client’s rights and responsibilities. An *601 attorney must provide the client with this statement before representation of the client begins (22 NYCRR 1400.2,1200.47).
Movant’s failure to establish compliance with the matrimonial rules precludes resort to the court for the determination of the amount of a charging lien. Failure to comply with these rules, at a minimum, should be a bar to the enforcement or collection of attorneys’ fees.
Movant is denied a charging lien for the full amount of the $35,273.95 it has claimed for legal fees and disbursements. R. & R. shall receive the $10,000 granted by Acting Justice Harkavy from funds held in escrow by the law firm of B. & K., attorneys for the plaintiff K. C. This court is without power to modify or abrogate the order of another Justice. The defendant is entitled to receive the balance of $25,273.95 from the $35,273.95 being held currently as a charging lien by B. & K. for R. & R. These respective amounts shall be released to the movant and the defendant within 10 days of the date of service of this order. The issue of whether any interest is due on these sums pursuant to Domestic Relations Law § 244 and CPLR 5001 and 5002 was raised by subsequent motion and will be addressed in a later decision and order.

. Admitted into evidence on March 3, 1997 as movant’s exhibit 1.

. Order of contempt and transcript admitted into evidence on March 10, 1997 as movant’s exhibit 8.

. Admitted into evidence on March 11, 1997 as defendant’s exhibit C.

. In later testimony Mr. R. admitted his law firm had received $5,000 rather than $4,000 as and for the retainer.

. Mr. R., after looking at copies of bills prepared by his firm, testified that the defendant received invoices on July 19, 1995, July 25, 1995, July 27, 1995, August 21, 1995 and a final one on May 30, 1996.

. Admitted into evidence on March 10, 1997 as movant’s exhibit 7.

. See the bank statement dated April 30, 1996 admitted into evidence on April 7, 1997 as defendant’s exhibit J.

. Through Mr. R, the movant introduced a document described as a bill for legal services for the period from August 2, 1996 through February 26, 1997. The total amount in fees claimed for this period of time is $8,669.50. R. & R. later waived any claim for counsel fees for this period. The total amount in fees the movant asserts a right to collect is $35,273.95.

. The $177,000 referred to by the witness is the approximate total of the amount payable by the plaintiff K. C. under the order of Acting Justice Harkavy dated February 1, 1996.

. A previous court order had directed that payments of maintenance be sent to R & R rather than directly to the defendant.

. Maintenance and alimony payments may not be the subject of an attorney’s charging lien. (Freed, Brandes and Weidman, Attorneys’ Liens, op. cit.)

. The matrimonial rules include the creation of 22 NYCRR part 1400; amendment of the Disciplinary Rules of the Code of Professional Responsibility (DR 1-102 [22 NYCRR 1200.3], DR 2-106 [22 NYCRR 1200.11], DR 2-105-a [22 NYCRR 1200.10-a]); creation of arbitration provisions for fee disputes (22 NYCRR part 136); and amendment to the Uniform Rules for Trial Courts (22 NYCRR 202.16).

. The result would be different in the instance of a motion for a charging lien where representation commenced before November 30, 1993 (Oldendorf v Oldendorf 226 AD2d 790 [3d Dept 1996]).

. Mr. S., the defendant’s current attorney, informed Mr. R. on or about November 18, 1996 that the defendant had rejected a settlement of the motion for a retaining lien brought by R. & R.

. L.H. v V. W. (supra) involved an attorney who filed an action to collect in the Small Claims Part of the Civil Court.

. This provision is also DR 2-106 (C) (2) (B).

. This provision is also DR 9-102 (D) (3).