OPINION OF THE COURT
Robert A. Spolzino, J.
At issue in this fee dispute between the plaintiff and her former attorneys is the compatibility, or incompatibility, of the attorneys’ common-law right to a retaining lien with the requirement now established by the Appellate Divisions that matrimonial fee disputes be determined by arbitration. The issue arises in the context of the plaintiff’s motion for an order directing her former attorneys to deliver their file with respect to this action to her new attorney. In response, the former attorneys have asserted a common-law retaining lien with respect to the file and have cross-moved for an immediate hearing to determine their fee and secure their lien. The plaintiff claims, instead, an entitlement to arbitration of the fee dispute, a claim that is contested by her former attorneys, who argue that by invoking the authority of the court to compel delivery of the file without first seeking arbitration of the dispute, the plaintiff has waived her right to arbitration and thereby entitled the attorneys to have their fee determined by the court.
Analysis of the competing claims of the plaintiff and her former attorneys must begin with the basic principle that the plaintiff, like every client, had the right to discharge her former attorneys at any time with or without cause (see, Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 457 [1989]; Teichner v W&J Holsteins, 64 NY2d 977, 979 [1985]). An attorney who has been discharged without cause, and who has satisfied the conditions precedent to earning a fee (see, Bishop v Bishop, 295 AD2d 382 [2d Dept 2002]), is entitled to recover the amount of his or her compensation (see, Cohen v Cohen, 183 AD2d 802, 803 [2d Dept 1992]) in three ways: by the assertion of a retaining lien, by the assertion of a charging lien or by commencing a plenary action (see, Teichner v W&J Holsteins, 64 NY2d at 979, supra; Butler, Fitzgerald & Potter v Gelmin, 235 AD2d 218 [1st Dept 1997]).
*770 A retaining lien, which attaches automatically upon the commencement of the representation, is a security interest in any documents or other items of the client that are in the possession of the attorney and is extinguished when the possession terminates other than by court order (see, Matter of Cooper, 291 NY 255 [1943]; Matter of Heinsheimer, 214 NY 361 [1915]; Kaplan v Reuss, 113 AD2d 184, 186 [2d Dept 1985], affd 68 NY2d 693 [1986]; Rosen v Rosen, 97 AD2d 837 [2d Dept 1983]). A charging lien is a security interest in the favorable result of the litigation (see, Lebandy v Carnegie Trust Co., 222 NY 525 [1917]; Butler, Fitzgerald & Potter v Gelmin, 235 AD2d 218 [1997], supra; Kaplan v Reuss, 113 AD2d at 186, supra). It attaches automatically upon the interposition of the claim, whether in a complaint or a responsive pleading (see, Judiciary Law § 475; see also, Banque Indosuez v Sopwith Holdings Corp., 98 NY2d 34 [2002]; LMWT Realty Corp. v Davis Agency, 85 NY2d 462, 467 [1995]). Where either lien is asserted, the attorney is entitled to a prompt hearing to fix the amount of the lien (see, Katsaros v Katsaros, 152 AD2d 539 [2d Dept 1989]; Rosen v Rosen, 97 AD2d 837 [1983], supra; see also, Butler, Fitzgerald & Potter v Gelmin, 235 AD2d 218 [1997], supra).
The one exception to the attorney’s entitlement to protect his or her fee by the assertion of a lien is the situation presented where the attorney is discharged for cause, i.e., as a result of attorney misconduct or the unjustifiable abandonment of the representation, in which case neither a retaining lien nor a charging lien may be asserted (see, Klein v Eubank, 87 NY2d 459, 464 [1996]; Teichner v W&J Holsteins, 64 NY2d at 979, supra; see also, Campagnola v Mulholland Minion & Roe, 76 NY2d 38, 44 [1990]; Matter of Montgomery, 272 NY 323, 326 [1936]; Holmes v Evans, 129 NY 140 [1891]; Shalom Toy v Each & Every One of Members of N.Y. Prop. Ins. Underwriting Assn., 239 AD2d 196, 198 [1st Dept 1997]). Whether an attorney was discharged with or without cause must be determined by a timely hearing (see, Teichner v W&J Holsteins, 64 NY2d at 979, supra; Matter of Clark [Vitiello], 261 AD2d 824 [4th Dept 1999]; Marschke v Cross, 82 AD2d 944 [3d Dept 1981]). If the discharge was for cause, the attorney may not recover his or her compensation (see, Teichner v W&J Holsteins, 64 NY2d at 979, supra). If it is determined that the discharge was without cause, and occurred before the completion of the attorney’s services, the amount of compensation must be determined on a quantum meruit basis (see, Teichner v W&J Holsteins, 64 NY2d at 979, supra).
*771 In addition to the right to a speedy determination of his or her entitlement to a fee, the outgoing attorney who asserts a retaining lien is entitled to retain the client’s file, and, in the absence of exigent circumstances, may not be compelled to deliver the file to the client or substitute counsel until , an expedited hearing has been held to determine the amount of the fee owed (see, Eighteen Assoc. v Nanjim Leasing Corp., 297 AD2d 358 [2d Dept 2002]; Markard v Markard, 206 AD2d 512 [2d Dept 1994]; Fields v Casse, 182 AD2d 738 [2d Dept 1992]; Andreiev v Keller, 168 AD2d 528 [2d Dept 1990]) and the attorney is paid the reasonable value of his or her services or adequate security is provided therefor (see, Hom v Hom, 210 AD2d 296, 298 [2d Dept 1994]; Cohen v Cohen, 183 AD2d 802 [1992], supra; Matter of Science Dev. Corp. [Schonberger], 159 AD2d 343, 344 [1st Dept 1990]; Corby v Citibank, 143 AD2d 587, 588 [1st Dept 1988]; Pileggi v Pileggi, 127 AD2d 751 [2d Dept 1987]; Steves v Serlin, 125 AD2d 780, 781 [3d Dept 1986]; Artim v Artim, 109 AD2d 811, 812 [2d Dept 1985]; Rosen v Rosen, 97 AD2d at 837, supra; Manfred & Sons v Mortillaro, 69 AD2d 1019 [4th Dept 1979]). The burden is on the client who seeks the immediate release of the file to establish by affidavit the existence of exigent circumstances (see, Pileggi v Pileggi, 127 AD2d at 751, supra). Where outgoing counsel sufficiently challenges the claim of exigent circumstances, a hearing must be held regarding the claim (see, Cohen v Cohen, 183 AD2d at 803-804, supra; Pileggi v Pileggi, 127 AD2d at 751, supra). Ultimately, whether the fee “shall be presently payable or secured by a lien on the cause of action rests in the sound discretion of the trial court” (Hom v Hom, 210 AD2d at 298, supra).
Fixing the amount of the lien is now complicated by the rules of the Appellate Divisions that establish a clear public policy in favor of the arbitration of attorney-client fee disputes (see, 22 NYCRR 1230.1, 1400.7), in accordance with procedures established by the Rules of the Chief Administrator of the Courts (22 NYCRR part 137). Pursuant to those Rules and the Code of Professional Responsibility, fee disputes are required to be resolved by arbitration where the client so elects (22 NYCRR 137.2; Code of Professional Responsibility DR 2-106 [22 NYCRR 1200.11 (e)]). Arbitration may be initiated by the attorney, where the client has consented in advance (22 NYCRR 137.6 [a] [2]), or by the client, either upon his or her own initiative (22 NYCRR 137.6 [c]) or by responding to the notice provided by the attorney. That notice, advising the cli *772 ent of the right to arbitration of the fee dispute, must be given by the attorney, in writing, “where the attorney and client cannot agree as to the attorney’s fee” (22 NYCRR 137.6 [a] [1]). Its service commences the 30-day period within which the client may elect to resolve the dispute by arbitration (22 NYCRR 137.6 [b]). If the client does not file the request for arbitration within 30 days of the mailing of the notice, the client has waived the right to request arbitration and the attorney may commence an action to recover the fee (Matter of Gretz v Goldman, Sup Ct, Westchester County, May 21, 2002, Nicolai, J., Index No. 08302/00; 22 NYCRR 137.6 [b]). If the notice is required but not served, the attorney cannot recover a fee (see, Julien v Machson, 245 AD2d 122 [1st Dept 1997]; L.H. v V.W., 171 Misc 2d 120 [Civ Ct, Bronx County 1996]).
Here, the plaintiffs former attorneys provided no notice of the right to arbitrate. They claim, however, that they were not required to provide the notice because the plaintiff had never disputed their fee prior to moving to compel the delivery of the file. Although the plaintiff does not deny that she received regular bills from her former attorneys, there is no evidence, either in the form of correspondence between the plaintiff and her former attorneys or otherwise, that the plaintiff had previously expressed to them her disagreement with the fees charged. The plaintiffs new attorney did not dispute the fee or request arbitration when he served the outgoing attorneys with a consent to change attorneys and requested the file in November 2002. It is not controverted that the former attorneys responded by immediately asserting their retaining lien and refusing to deliver the file until their fee had been fixed and the amount due paid or otherwise secured. The plaintiffs incoming attorney renewed his request for the file at a conference before the court on January 6, 2003, and in the instant motion, made by notice of motion dated January 16, 2003. Thus, while the plaintiff now claims to have been overcharged, there is no evidence that she ever disputed her former attorneys’ fees prior to moving to compel the delivery of the file. Her only direct allegation in this regard is that “they are well aware of the fact that I was upset over their fee.” Such a conclusory allegation is not sufficient to sustain her claim that she disputed her former attorneys’ fees.
In the absence of a fee dispute prior to the motion to compel delivery of the file, two questions are presented. First, has the entitlement of the plaintiffs former attorneys to recover their fee been defeated by their failure to provide the notice to *773 arbitrate? Second, if it has not, has the plaintiff waived her right to arbitration by asking the court to direct the delivery of former counsel’s file? For the reasons that follow, both questions must be answered in the negative.
The Rules of the Chief Administrator of the Courts clearly establish that the notice of the availability of arbitration must be provided by the attorney, in writing, “where the attorney and client cannot agree as to the attorney’s fee” (22 NYCRR 137.6 [a] [1]). Nevertheless, there is a clear split between the Appellate Division departments with respect to the mandatory nature of the notice. The Appellate Division, First Department, has held, in Paikin v Tsirelman (266 AD2d 136, 136-137 [1st Dept 1999]), that outgoing counsel is obligated to send the 30-day notice even in the absence of any fee disagreement with the client. The failure to do so mandates the dismissal of any action for unpaid counsel fees. The Appellate Division, Second Department, however, has explicitly declined to follow Paikin, holding instead that if the client has not disputed the reasonableness of the fees charged by outgoing counsel, the attorney is not required to send the notice (see, Scordio v Scordio, 270 AD2d 328 [2d Dept 2000]). This court must, of course, adhere to the authority of the Appellate Division, Second Department. Accordingly, since there was no fee dispute with the client prior to the plaintiff’s motion to direct the delivery of the file, there was no requirement that the plaintiff’s former attorneys send the plaintiff the 30-day notice and their failure to do so does not impair their lien or defeat their entitlement to a fee.
The second question, left undecided by Scordio, but presented here, is whether the client, whose former attorneys have asserted a retaining lien but were not required to send a notice of the availability of arbitration because there was no fee dispute known to the attorneys, has forfeited her right to arbitration by moving to compel her former attorneys to deliver the file without first disputing the fee or otherwise demanding that the fee dispute be arbitrated. Although it is improper to direct arbitration of a fee dispute where the client has not requested it (see, Markard v Markard, 263 AD2d 470, 471-472 [2d Dept 1999]), the client here has, in fact, now made such a request. While it can be argued, as her former attorneys do, that by moving to compel delivery of the file before requesting arbitration she has elected her remedy — a remedy that necessarily entails a speedy hearing and determination of the fee dispute by the court, not an arbitrator (see, Eighteen Assoc. v Nanjim Leasing Corp., supra; Reich v Reich, supra; Fields v *774 Casse, supra; Andreiev v Keller, supra; Manes v Manes, supra) — it is nonetheless true that the former attorneys are bound by both the rules of the Appellate Divisions and the Code of Professional Responsibility to submit a fee dispute to arbitration where the client so requests (see, 22 NYCRR 1230.1, 1400.7).
Waivers, of course, are not favored in the law, and should not be found except where the conduct upon which they are based makes it unjust to do otherwise (see generally, Christian v Christian, 42 NY2d 63, 73 [1977]). The Rules of the Chief Administrator of the Courts provide for a waiver by the client of the right to arbitrate where the client fails to respond in a timely fashion to the attorney’s notice of the availability of arbitration (see, 22 NYCRR 137.6 [b]); they do not address the situation presented where no such notice is required. Moreover, although the rules of the Appellate Divisions provide for a right to arbitration only in accordance with the procedures established by the Chief Administrator of the Courts, the arbitration requirements of the Code of Professional Responsibility are not so limited, arguably precluding any waiver by the client of the entitlement to arbitration of a fee dispute. Waivers have, of course, been recognized (see, 22 NYCRR 137.6 [b]; Flanagan v Flanagan, 267 AD2d 80 [1st Dept 1999]; Koeth v Koeth, 2002 NY Slip Op 40046 [U] [Sup Ct, Nassau County 2002]), so it is too late to argue that no waiver is permissible. Moreover, in what appears to have been a conscious decision (see, Moraitis v Moraitis, 181 Misc 2d 510 [Sup Ct, Nassau County 1999]), the Rules of the Chief Administrator do not abrogate the attorney’s common-law retaining lien, which would be the unavoidable result of any rule that allowed the client an unrestricted right to select arbitration even after invoking another procedure by which the fee dispute could be resolved. The question, then, is whether there is some way in which the client’s request for arbitration, obviously now favored in the law, although not absolutely, can be consistent with the attorney’s assertion of a common-law retaining lien, that remains the attorney’s right despite the now established policy favoring the arbitration of fee disputes.
Several courts have struggled with the relationship between the client’s entitlement to arbitration and the process by which attorneys’ liens are fixed (see, Moraitis v Moraitis, 181 Misc 2d 510 [1999], supra; K.E.C. v C.A.C., 173 Misc 2d 592, 601 [Sup Ct, Kings County 1997]). None, however, has addressed the precise issue presented here. Unlike the situations presented *775 in Koeth and K.E.C., at issue here is a retaining lien, which carries with it the entitlement to a speedy hearing and the promise of swift payment thereafter; unlike the situation presented in Moraitis, the plaintiff’s former attorneys have promptly asserted their claim here.
Because of the frequent changes of counsel in matrimonial actions (see, Koeth v Koeth, 2002 NY Slip Op 40046 [U], supra), it is not uncommon for an attorney to assert a retaining lien and the client to assert a right to arbitration of the underlying fee dispute. Three interests come into play when that happens. The lawyer is entitled to be paid for the services he or she has rendered; the client is entitled to litigate the reasonableness of the fee; and the other party to the action is entitled a prompt resolution of the issue so that the matrimonial action is not unduly delayed. Accommodating these three interests requires that the court address the dispute immediately pursuant to a procedure by which the rights of the client to arbitration and of the attorney to a speedy determination of, and payment of or security for, his or her fee are protected without bringing the action to a halt in order to do so.
The critical factor in ensuring that the action proceeds in a timely manner is requiring the prompt delivery of the file to incoming counsel. This cannot be done, however, without first determining whether the attorney has been discharged for cause (see, Teichner v W&J Holsteins, 64 NY2d at 979, supra; Cohen v Cohen, 183 AD2d at 803, supra; Andreiev v Keller, 168 AD2d at 529, supra). Because the mandatory arbitration rules limit the scope of the arbitration to the reasonableness of the fee charged (see, 22 NYCRR 137.0, 137.7 [d]; 1200.11 [e]) and do not provide for the arbitration of the issue of whether the counsel’s discharge was for cause, which is exclusively a question for judicial review and determination (see, Koeth v Koeth, 2002 NY Slip Op 40046[U], supra; Scheinkman, New York Law of Domestic Relations § 19:13 [2002 Pocket Part] [12 West’s NY Prac Series]); the court must initially determine whether counsel’s discharge was for cause. Cause hearings have been required on the basis of allegations that counsel had commenced unnecessary litigation (see, Shalom Toy v Each & Every One of Members of N.Y. Prop. Ins. Underwriting Assn., 239 AD2d at 197-198, supra), failed to complete discovery (see, Cohen v Cohen, supra), and engaged in unnecessary motion practice (see, Katsaros v Katsaros, 152 AD2d at 540, supra). Here, the plaintiffs allegations, although denied by her former counsel, are sufficient to raise a triable issue of fact in this regard. A hearing is, therefore, similarly required.
*776 If at the conclusion of that hearing it is found that there was cause for the discharge, the matter is resolved, because both the entitlement of the plaintiffs former attorneys to recover their fee and their retaining lien are defeated and the file must be delivered immediately to incoming counsel (see, Klein v Eubank, 87 NY2d at 464, supra; Teichner v W&J Holsteins, 64 NY2d at 979, supra; Shalom Toy v Each & Every One of Members of N.Y. Prop. Ins. Underwriting Assn., 239 AD2d at 198, supra). If, on the other hand, the issue of cause for the discharge is resolved in favor of the plaintiffs former attorneys, the court must address the issue of exigent circumstances, such as indigency (see, Cohen v Cohen, 183 AD2d at 803-804, supra; Katsaros v Katsaros, 152 AD2d at 540, supra; Pileggi v Pileggi, 127 AD2d 751 [1987], supra; Moraitis v Moraitis, 181 Misc 2d at 512, supra), which, if found, would justify directing the immediate release of the file (see, Eighteen Assoc. v Nanjim Leasing Corp., 297 AD2d 358 [2002], supra; Reich v Reich, 272 AD2d 313 [2000], supra; Manes v Manes, 248 AD2d 515 [1998], supra; Markard v Markard, 206 AD2d 512 [1994], supra). The plaintiff makes no claims of exigent circumstances here other than the normal exigencies inherent in the need to conclude a matrimonial action. While these issues are not without importance, particularly to the other party to this action, it would render the concept of exigent circumstances meaningless to say that the normal incidents of litigation, without more, create such a situation. Since the plaintiff has not alleged anything further, there is no basis upon which the court can find exigent circumstances here, even if that issue is reached. To the extent that the plaintiff seeks a release of the file without otherwise securing the fee of her former attorneys, therefore, her motion must be denied.
In the absence of exigent circumstances, the court must, before requiring the release of the file, either determine the amount of the fee to which the plaintiffs former attorneys are entitled and direct its payment or protect the fee claim by identifying and sequestering property sufficient to satisfy it (see, Hom v Hom, 210 AD2d at 298, supra; Cohen v Cohen, 183 AD2d 802 [1992], supra; Pileggi v Pileggi, 127 AD2d 751 [1987], supra). Although several appellate decisions can be read as requiring that the court determine the fee (see, Eighteen Assoc. v Nanjim Leasing Corp., 297 AD2d at 359, supra; Markard v Markard, 206 AD2d 512 [1994], supra; Fields v Casse, 182 AD2d 738 [1992], supra; Andreiev v Keller, 168 AD2d 528 [1990], supra), these authorities either predate the rules *777 requiring arbitration of such disputes or are wholly silent with respect to whether the client had requested arbitration. There is nothing inherent in the security interest established by a retaining lien, however, that entitles the attorney to choose the forum in which the fee dispute is ultimately resolved. In fact, by requiring that lawyers submit fee disputes to arbitration, the Code of Professional Responsibility has explicitly deprived the attorney of the choice of the forum for the ultimate fee determination. The purpose of the retaining lien is not to determine the forum, but to secure the fee claim. It is not necessary to that purpose that the fee determination be made by the court. Once adequate security for the fee claim, other than the file, is in place, the purpose of the lien is satisfied and the fee can be determined otherwise. Leaving the fee determination to be made by arbitration where possible furthers the public policy in favor of arbitration, without detriment to the interest of the other party to the litigation in avoiding the delays inherent in the retention of the file by outgoing counsel. Thus, where, as here, the client has requested that the fee dispute be arbitrated, and assets other than the file are available to secure the attorneys’ fee claim, there is no reason why the client’s request cannot be accommodated by referring the matter to arbitration for ultimate determination of the fee.* A hearing is required, however, to determine whether such other security is available. If it is not, the plaintiff will have to proceed in the litigation without the benefit of her former attorneys’ file.
Accordingly, the plaintiffs motion for an order directing her former attorneys to deliver their file with respect to this matter is granted to the extent that a hearing will be held to determine whether the plaintiffs discharge of her former attorneys was for cause. Determination of the cross motion by her former attorneys for an order determining their fee is held in abeyance pending the determination of the issue of cause. In the event that the discharge of the plaintiffs former attorneys is determined to be for cause, the cross motion will be denied. In the event that the discharge is found to be without cause, a hearing will be held immediately to address the issue of the availability of assets of the plaintiff sufficient to secure her for *778 mer attorneys’ fee claim. If such a hearing is held, and it is found that such assets are available, those assets will be sequestered to secure payment of the fee. If, after such a hearing, no such assets are available, the plaintiffs motion to compel delivery of the file will be denied. In either case, the matter will be referred to arbitration for determination of the fee to which the plaintiffs former attorneys are ultimately entitled.

 In Matter of Gretz v Goldman (Sup Ct, Westchester County, July 11, 2002, Spolzino, J., Index No. 08302/00), this court held that by sending a notice of the right to arbitrate, counsel had triggered the client’s right to elect arbitration and could not thereafter refuse to submit the fee dispute to arbitration, despite the fact that the request was submitted after the 30-day statutory period had expired. Here, no such notice was sent to the client.