OPINION OF THE COURT
Randy Sue Marber, J.
The within action was tried as a nonjury trial before this court on March 31 and April 1, 2003.
*160 The genesis of this action is a dispute over a legal fee for work performed during the representation of plaintiff Madelon MacKenzie (MacKenzie) in her personal injury action (hereinafter the underlying action) against defendant North Shore Golf Carts (North Shore). The accident from which the underlying action emanated occurred on August 28, 1998 at the Hampton Classic Horse Show. MacKenzie was operating a golf cart that had been rented from North Shore. Mechanical difficulties ensued on more than one occasion and MacKenzie, who was driving the golf cart, was ultimately thrown from the golf cart thereby causing injuries to her wrist.
MacKenzie thereafter retained Meyer, Suozzi, English & Klein, P.C. (Meyer Suozzi) on October 16, 1998 to represent her with regard to her personal injury action. Meyer Suozzi duly filed a retainer statement with the Office of Court Administration of the State of New York (OCA) on October 20, 1998.
Meyer Suozzi’s representation of MacKenzie continued through August 20, 1999, at which time by letter MacKenzie terminated their services without conveying any reason and then retained the law firm of Albin & Richman to represent her in the underlying action. A letter dated September 1, 1999 from Albin & Richman to Meyer Suozzi advised Meyer Suozzi of their impending representation of MacKenzie and enclosed a check from MacKenzie to Meyer Suozzi for $631.76 for reimbursement of disbursements. A consent to change attorney form was executed by MacKenzie on August 28, 1999 and sent by Albin & Richman to Meyer Suozzi on September 14, 1999 along with a cover letter which stated in part: “In connection with your claim for legal fees we will attempt to resolve this matter at the conclusion of the case. In the event we cannot agree this dispute will be submitted to the Supreme Court of Nassau County for determination.” The consent to change attorney along with the file was sent by Meyer Suozzi to Albin & Richman on September 23, 1999. Meyer Suozzi’s letter stated in part:
“Thank you for acknowledging this firm’s lien in this matter. We certainly hope that the matter of this firm’s legal fees can be amicably resolved. We advise you once again that there is an outstanding offer from the insurance company for North Shore Golf Car Service, Inc. to Ms. MacKenzie in the amount of $45,000.00, which we had previously extended to your client.”
*161 During the course of Meyer Suozzi’s representation of MacKenzie, various work was performed by attorneys and paralegals. In part, this included interviewing the client and obtaining her accident and medical history, obtaining and processing authorizations for medical records, obtaining health insurance reimbursement for medical expenses, legal research, accompanying MacKenzie to an independent medical examination, conducting settlement negotiations with the insurance carrier for North Shore, and preparing a brief for nonbinding mediation with necessary exhibits.
Apparently, at some earlier point in time Meyer Suozzi represented MacKenzie and her husband with regard to a corporate matter from CRM Co. An ethical issue arose and Meyer Suozzi terminated its relationship with MacKenzie and her husband. This was not an amicable termination. During the representation of Meyer Suozzi involving CRM Co., a civil case ensued against MacKenzie and her husband due to an embezzlement of the corporation by the chief financial officer and chief operating officer. MacKenzie and her husband had given a personal guarantee and there is a $10,000,000 judgment against them in California in an action brought by a factor company. MacKenzie incredibly claimed at the instant trial that her termination of Meyer Suozzi in the underlying personal injury action had nothing to do with the decision by Meyer Suozzi to no longer represent MacKenzie with regard to CRM Co.
Testimony concerning the legal work performed in the instant case was offered by Donnalynn Darling, Esq. who is a partner at Meyer Suozzi. Along with Jack Russo, Esq., she performed the bulk of the legal services on the file. Ms. Darling has been admitted to practice in New York State as well as federal courts since 1979 and was admitted to practice before the United States Supreme Court in 1985. She has a significant number of years experience as a trial attorney in the personal injury field. She is the chair of the Personal Injury Department at Meyer Suozzi and has been with the firm since 1992. She currently has a billing rate of $325 per hour and in 1998-1999 had a billing rate of $275 per hour. While personal injury clients do not receive a “bill” for services rendered on a contingent fee case, time records are nevertheless kept for internal purposes of the firm. The total bill from Meyer Suozzi for the period of representation of MacKenzie was $12,099.75. This figure does not include time recorded prior to MacKenzie signing a retainer with Meyer Suozzi nor time recorded after the discharge.
*162 Meyer Suozzi learned by letter dated October 24, 2001 that the underlying case was settled for $95,000. Meyer Suozzi subsequently determined from court records that the stipulation of discontinuance was filed in July 2000, over one year before Albin & Richman notified Meyer Suozzi of the settlement. A closing statement concerning this settlement was filed by Albin & Richman with OCA on July 27, 2000. Said closing statement indicates that the carrier paid the settlement funds on July 17, 2000 and the client’s funds were paid on July 26, 2000. It also notes the commencement of the underlying action in the Supreme Court of Nassau County on May 17, 2000.
A motion was brought by Meyer Suozzi in the Supreme Court of Nassau County in the underlying action to recover attorney’s fees. In the decision on said motion (Segal, J., Jan. 29, 2002), Justice Segal determined, inter alia, that Meyer Suozzi was retained by MacKenzie on October 16, 1998 and that on or about August 28, 1999 MacKenzie retained Albin & Richman. He further determined that at no time prior to the September 23, 1999 execution of the consent to change attorney by Meyer Suozzi and the forwarding of the file to Albin & Richman did Meyer Suozzi commence an action on behalf of MacKenzie. Therefore, a lien under section 475 of the Judiciary Law does not exist.
No proof was proffered at trial of a discharge of Meyer Suozzi for cause. Mere speculation as to what settlement demand should have been made rather than the $150,000 demand made prior to mediation hardly rises to any proof of discharge for cause or legal malpractice. Albin & Richman has not shown that MacKenzie’s recovery would have been higher but for the Meyer Suozzi representation. Ultimately, the aforementioned mediation was held and the underlying action thereafter was settled for $95,000. A summons and complaint were filed; however no formal discovery or depositions ever took place. The legal fee to Albin & Richman was $31,885.33 and the balance to MacKenzie was $63,114.67.
Meyer Suozzi is relegated to a claim for quantum meruit for the reasonable value of services rendered in its representation of MacKenzie. MacKenzie exercised her absolute right to discharge an attorney at any time. (Teichner v W&J Holsteins, 64 NY2d 977 [1985].) An attorney who is discharged without cause by a client is entitled to quantum meruit recovery, regardless of whether that amount is more or less than the amount provided for in the retainer agreement. (Shalom Toy v Each & *163 Every One of Members of N.Y. Prop. Ins. Underwriting Assn., 239 AD2d 196.)
This court can consider a number of factors including the nature of the litigation, the difficulty of the case, the amount of time spent, the amounts customarily charged, the professional standing of counsel and the results obtained. (See Matter of Potts, 213 App Div 59 [1925], affd 241 NY 593 [1925]; Smith v Boscov’s Dept. Store, 192 AD2d 949 [1993].)
In the instant case we are presented with the unique circumstance of having reasonably detailed time records available in a personal injury case which was handled on a one-third contingent fee basis. While these time records are not dispositive for the court’s determination, they must be strongly considered when coupled with the credible testimony of Donnalynn Darling, Esq. and the sketchy testimony of MacKenzie.
A review of the credible evidence before the court reveals that appropriate work was delegated to paralegals at Meyer Suozzi. The court notes that the underlying action did present some difficult issues with respect to liability from MacKenzie’s perspective, to wit: the signing of a “waiver” with North Shore at the time of the golf cart rental, the continued use of the golf cart despite prior mechanical problems, and the fact that in essence MacKenzie was the operator in a “one vehicle” accident. An initial settlement offer of $20,000 was obtained by Meyer Suozzi followed by a later offer of $45,000. The status of negotiations was conveyed by Meyer Suozzi to MacKenzie and to Albin & Richman. Once the representation of MacKenzie changed from Meyer Suozzi to Albin & Richman, the primary legal activity was attendance at the previously scheduled mediation and follow-up negotiations.
Any amounts billed by Meyer Suozzi prior to the signing of the retainer as well as subsequent to their discharge by MacKenzie are not considered in the determination of an appropriate figure for the quantum meruit compensation due to Meyer Suozzi from Albin & Richman. This court determines that the reasonable value of services rendered to MacKenzie by Meyer Suozzi is $9,450.
Let judgment for the plaintiff be entered in the amount of $9,450 plus costs and interest from July 26, 2000.