OPINION OF THE COURT
 

 Titone, J.
 

 In this proceeding brought by an attorney to enforce a statutory charging lien, the issues are whether a lawyer who was once but is no longer the attorney of record may invoke the Judiciary Law § 475 lien and whether the protection of that statute is forfeited when the attorney and client mutually consent to the termination of their relationship. We hold that the statutory lien is available even where both of these conditions are present.
 

 Petitioner represented respondents Eubank Group, Edwin Eubank and Ellis Duncan as attorney of record in their efforts to recover a real estate brokerage commission. During the course of this representation, difficulties between petitioner and his clients emerged. After about eight months, petitioner formally withdrew from his representation, and a consent to a change of attorney was executed and filed. Edwin Eubank, who is himself a lawyer, then became the attorney of record.
 

 When the action was settled some 13 months later, petitioner commenced the present proceeding to determine and enforce the Judiciary Law § 475 charging lien to which he believed himself entitled. An escrow fund sufficient to cover petitioner’s claimed fees was deposited with the court. Respondents then moved for summary judgment dismissing the petition, arguing that only the present attorney of record has the right to bring a proceeding to enforce the section 475 lien.
 

 The Supreme Court agreed with respondents’ contention and dismissed the proceeding, holding that the language of the statute suggested that the lien should be confined to the attorney of record at the time the proceeding is brought. The Ap
 
 *462
 
 pellate Division upheld the dismissal on the alternative theory that petitioner’s statutory lien was lost when a consent confirming his withdrawal was filed without any provision preserving his right to a charging lien. Petitioner appealed the dismissal of his petition by leave of this Court. We now reverse.
 

 With respect to respondents’ primary contention, we conclude that an attorney need not be counsel of record at the time the judgment or settlement fund is created in order to be entitled to the lien afforded by Judiciary Law § 475. This Court has previously recognized the right of a discharged attorney to enforce the statutory charging lien
 
 (Matter of Cohen v Grainger, Tesoriero & Bell,
 
 81 NY2d 655, 658). Further, contrary to respondents’ contention, Judiciary Law § 475’s use of the present tense to designate "the attorney who
 
 appears
 
 for a party” (emphasis supplied) as the person entitled to the lien lends no support to their position, since the language in question refers to the time of the lien’s attachment, not its enforcement. Thus, under both the statute and our precedents, an attorney’s participation in the proceeding
 
 at one point
 
 as counsel of record is a sufficient predicate for invoking the statute’s protection
 
 (see, Rodriguez v City of New York,
 
 66 NY2d 825).
 

 Similarly lacking in merit is respondents’ contention that an attorney of record who has withdrawn by agreement is not entitled to enforce the statutory lien and must instead rely on an agreement to be negotiated with the client, either at the time of retention or at the time the withdrawal occurs. It has long been held that attorneys who terminate their representation
 
 for just cause
 
 continue to be entitled to enforce their liens
 
 (e.g., Matter of Dunn,
 
 205 NY 398, 401;
 
 Corby v Citibank,
 
 143 AD2d 587;
 
 Goldman v Rafel Estates,
 
 269 App Div 647;
 
 Suffolk Roadways v Minuse,
 
 56 Misc 2d 6;
 
 Matter of Martin,
 
 36 Misc 2d 1020;
 
 Kent v Baker,
 
 31 Misc 2d 840). Thus, it is simply inaccurate to state that, as a general proposition, attorneys who voluntarily withdraw always forfeit their statutory charging liens.
 

 People v Keeffe
 
 (50 NY2d 149), on which respondents rely, did not overrule the foregoing cases. The
 
 Keeffe
 
 Court stated in dictum that "[a]n attorney’s charging lien may be lost if he
 
 voluntarily withdraws
 
 or is discharged for misconduct”
 
 (id.,
 
 at 156 [emphasis supplied]). However, that broadly stated proposition must be read in conjunction with the two cases cited in support,
 
 Matter of Dunn (supra)
 
 and
 
 Fischer-Hansen v Brooklyn Hgts. R. R. Co.
 
 (173 NY 492). Those cases merely recite the far
 
 *463
 
 narrower proposition that a charging lien is waived by an attorney who
 
 without just cause
 
 neglects or refuses to proceed with the prosecution of the case
 
 (accord, Halbert v Gibbs,
 
 16 App Div 126;
 
 Suffolk Roadways v Minuse,
 
 supra;
 
 Matter of Martin, supra; Matter of Kanfer & Kanter [Polansky],
 
 33 Misc 2d 292;
 
 Kent v Baker, supra; Eisenberg v Brand,
 
 144 Misc 878;
 
 Tuck v Manning,
 
 53 Hun 455). There is no indication in
 
 Keeffe
 
 that the. Court intended by its dictum to override or modify the long line of cases holding that attorneys who terminate the attorney-client relationship
 
 for just cause
 
 continue to be entitled to enforce their liens. Nor is there any suggestion in
 
 Keeffe
 
 that the Court intended to extend lien forfeiture to the myriad of cases in which the attorney’s representation is discontinued by mutual consent for reasons not rising to the level of misconduct or "just cause” on either side.
 

 While this Court has not expressly addressed the availability of Judiciary Law § 475’s charging lien in these situations, the operative pragmatic and public policy considerations militate against the rule respondents advocate. Attorney-client relationships frequently end because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by either the client or the lawyer. Others end because of unexpected conflicts of interests or changes in litigation strategy that require different lawyering skills. In some of those situations, the client may ask the attorney to withdraw. In others, it may be the attorney who initiates the termination process by offering to withdraw in order to avoid embarrassment, avert further conflict, preserve the relationship on a long-term basis or simply save the client from the discomfort of having to fire the attorney. Importantly, in many such cases, the decision to terminate the relationship is the product of a mutual choice.
 

 Under respondents’ formula, attorneys who voluntarily withdraw in these situations would be penalized by the loss of a valuable statutory protection — the charging lien. The social or jurisprudential benefits of imposing such a penalty are not readily apparent, but the negative consequences that would flow from such a rule may easily be discerned. A rule making the charging lien unavailable to attorneys who voluntarily withdraw would introduce a strong economic deterrent to the amicable settlement of attorney-client disputes. Concomitantly, rather than encouraging attorneys to bow out graciously when a significant difference of opinion or other reason for withdrawal arises, such a rule would give attorneys with an inter
 
 *464
 
 est in their clients’ claims every incentive to perpetuate the relationship until they are able either to negotiate a lien agreement or to provoke the client into terminating without "just cause.” Respondents’ proffered rule would thus foster contentious relations between attorneys and their clients.
 

 Inasmuch as this outcome is neither commanded by precedent nor suggested by the statutory language, we decline to embrace it. Instead, we hold that where an attorney’s representation terminates and there has been no misconduct, no discharge for just cause and no unjustified abandonment by the attorney, the attorney’s right to enforce the statutory charging lien is preserved without the need to resort to further negotiations or enter into new stipulations with the client. This rule will leave the attorney and client free to end their relationship without the additional complicating factor of the need to arrange for the protection of the attorney’s continuing and legitimate interest in the client’s cause of action.
 

 Applying this approach to the present case, we conclude that the lower courts’ grant of summary judgment in respondents’ favor was improper and that a hearing should be held on the question of petitioner’s entitlement to enforcement of his statutory charging lien. Although there was a claim that petitioner had abandoned his employment without just cause, that factual claim was vigorously disputed. Indeed, petitioner contended that he had not abandoned the relationship at all, but rather had withdrawn because both parties had "seen and felt the need to terminate.” Further, petitioner argued, the termination was the result of respondents’ unreasonable demands and, consequently, any "abandonment” the court found would have to be deemed supported by "just cause” on petitioner’s part. Under the traditional principles governing attorney-client relationships, petitioner’s entitlement to a Judiciary Law § 475 lien depends on the proper resolution of these allegations.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings consistent with this opinion.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.