Cassie SUTTON, Plaintiff–Appellant,

v.

NEW YORK CITY TRANSIT AUTHOR-
ITY, Steven Sardisco, Michael DeMeo,
Defendants–Appellees.

Docket No. 04–0429–cv.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 4, 2005.

Decided: Aug. 28, 2006.

Cassie Sutton, pro se, Brooklyn, N.Y.

Robert K. Drinan, New York City Tran-
sit Authority, Brooklyn, N.Y., on the brief,
for Defendants–Appellees.

Rick Ostrove, Robert M. Agostisi, Leeds
Morelli & Brown, P.C., Carle Place, N.Y.,
submitted papers for Leeds Morelli &
Brown.

Before NEWMAN and POOLER,
Circuit Judges; and BRIEANT,* District
Judge.

_____

* Honorable Charles L. Brieant of the United
States District Court for the Southern District
of New York, sitting by designation.

NEWMAN, Circuit Judge.

This appeal presents an issue of appellate jurisdiction in an unusual context and a merits issue concerning the appropriate amount of a lien for the fee of a client's former attorneys, an issue also arising in a somewhat unusual context. Cassie Sutton endeavors to appeal from an award of a charging lien to her former attorneys in the amount of $10,490.50, an award that ultimately was incorporated in a judgment of the District Court for the Eastern District of New York (Nina Gershon, District Judge) after an initial determination by Chief Magistrate Judge Joan M. Azrack. We conclude that we have appellate jurisdiction, despite the prematurity of Sutton's notice of appeal. We also conclude that the District Court properly declined to order the former attorneys to return their $7,500 retainer and properly ordered Sutton to pay expenses of $544.54, but that the charging lien was improperly awarded. We therefore affirm in part, vacate in part, and remand.

## Background

Sutton retained Leeds, Morelli and Brown ("LMB") to represent her in pursuing a discrimination claim against her former employer, the New York City Transit Authority. The agreement provided (a) that Sutton would pay, as a retainer, $5,000 upon signing the agreement and two additional payments of $2,500; (b) that LMB would receive 40 percent of any settlement, less all retainer payments, or 40 percent of a damage award after trial, without deduction for retainer payments; and (c) that Sutton would be responsible for all expenses. Sutton paid $5,000 plus

one payment of $2,500. LMB filed a Title VII suit. After considerable negotiation, the parties agreed to settle the suit for a payment to Sutton of $15,000, but, despite LMB's urging of Sutton to sign, the agreement was not executed. Sutton informed LMB that she would not sign because she was uncomfortable with having the firm represent her.

LMB wrote to Chief Magistrate Judge ("CMJ") Azrack, informing her that LMB wished to be relieved as counsel after Sutton raised questions with the firm regarding a news story implicating LMB in possible unfair settlements in other cases. CMJ Azrack subsequently granted LMB's request to be relieved. LMB then applied to CMJ Azrack for an attorney's charging lien under N.Y. Judiciary Law § 475 (McKinney 1997), in the amount of $37,879.18 (less the $7,500 retainer payments) on Sutton's file and on a worker's compensation claim, and immediate payment of $544.54 in expenses. Sutton opposed the request and sought return of the retainer payments.

In a Memorandum and Order dated November 25, 2003, CMJ Azrack denied Sutton's request for return of the retainer payments, granted LMB's request for immediate payment of $544.54 in expenses, and awarded a lien in the amount of $10,490.50. The Clerk of the District Court entered judgment on December 10, 2003, based on the November 25, 2003, Order.[1] Sutton then wrote to Judge Gershon objecting to the Magistrate Judge's Order of November 25. Although her letter is undated, a file stamp reveals that it was received in the *pro se* office of the Eastern District on December 5, 2003,

---

**1.** On December 8, 2004, CMJ Azrack amended her November 25 Order to specify that LMB's lien applied only to Sutton's Title VII suit and not her worker's compensation claim. On January 28, 2004, the Clerk of the District Court entered an amended judgment based on CMJ Azrack's original and amended rulings.

thus indicating that it was either mailed prior to December 5 or hand delivered on that date. On January 23, 2004, Judge Gershon signed an Order (entered January 29) stating that what she referred to as Sutton's December 5, 2003, letter "will be treated as an appeal" of CMJ Azrack's November 25, 2003, Order, and affirmed that Order. At some earlier point, new counsel entered an appearance for Sutton, but applied to CMJ Azrack on December 8, 2003, to be relieved, a request that was granted by an Order dated January 13, 2004, and entered January 30, 2004.

During the course of these rulings by CMJ Azrack and Judge Gershon, Sutton filed the notice of appeal on which our appellate jurisdiction is sought to be based. That notice, filed by Sutton *pro se*, was dated January 9, 2004, and filed on that date.

### Discussion

### I. Appellate Jurisdiction

] The initial question is: what is Sutton appealing? Her notice of appeal, filed on January 9, 2004, inexplicably listed that same date as the date of the decision she is appealing. However, there is no decision of either CMJ Azrack or Judge Gershon filed or entered on that date. From her papers in this Court, however, it is clear that she is seeking relief from CMJ Azrack's November 25, 2003, Order, particularly the award of a lien to LMB in the amount of $10,490.50, and we have no doubt that LMB understands that their lien is being contested in this Court. *See Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (liberally construing defective notices of appeal that manifested appellant's intent).

Whether the January 9, 2004, notice of appeal suffices to give us appellate jurisdiction to adjudicate the propriety of the lien is the next issue. That issue is complicated by the various steps taken in the District Court. First, CMJ Azrack entered the November 25, 2003, Order, fixing the amount of the charging lien. Then, the Clerk of the District Court entered the December 10, 2003, judgment, based on CMJ Azrack's November 25, 2003, Order. Then, Judge Gershon signed the January 23, 2004, Order, affirming CMJ Azrack's November 25, 2003, Order. Finally, the Clerk of the District Court entered the January 29, 2004, Order, based on Judge Gershon's January 23, 2004, Order.

Although it is not clear whether all of these steps were procedurally correct,[2] a matter we need not decide, we are satisfied that we have appellate jurisdiction to review the charging lien order, whether

---

**2.** We are not certain whether CMJ Azrack had authority to determine the amount of the charging lien or only recommend a proposed ruling to the District Court. *Compare Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir.2001) (stating, without approval or disapproval, that magistrate had "fixed" amount of charging lien), *with Louima v. City of New York*, 2004 WL 2359943, at *55 n. 83 (E.D.N.Y. Oct.5, 2004) (stating in dicta that fee applications considered by magistrate judge are subject to report and recommendation to district judge, not dispositive ruling and judgment).

The Eastern District has empowered their magistrate judges to act conclusively only with respect to all "non-dispositive pretrial matters unless the assigned district judge orders otherwise." E.D.N.Y. R. 72.2(a). In other circuits, there is authority that "[t]he application for fees cannot be characterized as nondispositive," *Rajaratnam v. Moyer*, 47 F.3d 922, 924 & n. 5 (7th Cir.1995); *see Estate of Conners v. O'Connor*, 6 F.3d 656, 659 (9th Cir.1993) (alternate holding).

As explained in the text, we need not resolve this aspect of the case because we have appellate jurisdiction over the lien decision regardless of the route by which it may validly reach this court for review.

that jurisdiction is based on the December 10, 2003, judgment or the January 29, 2004, judgment. If the December 10, 2003, judgment was proper, Sutton would have had 30 days to file a notice of appeal of that judgment to this Court, see Fed. R.App. P. 4(a)(1)(A), and her January 9, 2004, notice of appeal, filed on the 30th day after the December 10, 2003, Order, interpreted in light of her papers filed in this Court, is fairly understood as an attempt to appeal that judgment and the antecedent Order of CMJ Azrack. On the other hand, if the January 29, 2004, judgment was proper, we think that, under the circumstances, Sutton's January 9, 2004, notice of appeal may be regarded as a premature notice of appeal, which ripened into a proper notice of appeal upon the entry of the January 29, 2004, judgment.[3]

Although the underlying Title VII suit remains pending in the District Court, orders adjudicating attorney's fees are normally considered sufficiently distinct from the main litigation to be appealable as collateral orders, see White v. New Hampshire Dep't of Employment Security, 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), and the exercise of appellate jurisdiction is especially appropriate here since LMB has been permitted to withdraw as counsel for Sutton. We have previously upheld jurisdiction to consider a dispute concerning an attorney's charging lien under New York law, see Itar–Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448–53 (2d Cir.1998).

## II. The Merits

On the merits of LMB's claim, CMJ Azrack first ruled that the law firm had withdrawn for just cause and was therefore entitled to a lien. See Klein v. Eubank, 87 N.Y.2d 459, 463, 640 N.Y.S.2d 443, 444, 663 N.E.2d 599 (1996). She then recognized that a court determining the reasonable value of services rendered up

---

**3.** The Appellate Rules contain a provision concerning a premature notice of appeal. A notice filed "after the court announces a decision or order—but before entry of the judgment or order—is treated as filed on the date of and after the entry." Fed. R.App. P. 4(a)(2). With respect to the District Court's January 29, 2004, Order, Sutton's January 9, 2004, notice of appeal is more premature than this rule contemplates: it was not filed in the interval between January 23, 2004, when Judge Gershon filed her decision, and January 29, 2004, when that decision was entered. Nevertheless, we conclude that this extra prematurity should not disadvantage this *pro se* litigant because she was understandably prompted to file her notice of appeal by the previous entry of judgment on December 10, 2003, a judgment that purported to give force to the very ruling of the Magistrate Judge that Sutton is now endeavoring to challenge.

The situation is somewhat analogous to that in *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), where a litigant relied on a statement of a district court that certain post-trial motions were sufficiently timely to postpone the time for filing a notice of appeal. That statement turned out to be incorrect, but the Supreme Court ruled that the litigant was entitled to rely on it and that the notice of appeal, filed on date that would have been proper had the motions been timely, sufficed for appellate jurisdiction. Although *Thompson* has been distinguished, if not relegated to its unique facts, see *Carlisle v. United States*, 517 U.S. 416, 428, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 178–79, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), Sutton's claim for appellate jurisdiction is stronger than Thompson's. She is not too late, a circumstance rarely excused; she is arguably too early, and, if too early, she understandably relied on the action of the District Court in entering the December 10, 2003, judgment. Under these circumstances, we conclude that this *pro se* litigant's January 9, 2004, notice of appeal, is either effective to appeal the December 10, 2003, judgment or became effective to appeal the January 23, 2004, Order upon the entry of Judge Gershon's January 23, Order "affirming" the precise order that Sutton is endeavoring to challenge.

to the time a firm's representation ended (in the absence of provision in the retainer agreement for counsel withdrawing for cause) should look to "the terms of the percentage agreement, the nature of the litigation, difficulty of the case, time spent, amount of money involved, results achieved and amounts customarily charged for similar services in the same locality," *Ingber v. Sabato,* 229 A.D.2d 884, 887, 645 N.Y.S.2d 918, 920 (3d Dep't 1996) (citations omitted); *see also Ruggiero v. R.W. Gross Plumbing and Heating Inc.,* 226 A.D.2d 984, 986, 641 N.Y.S.2d 189, 191 (3d Dep't 1996) (court can consider "the contingency agreement as one factor in determining the value of services rendered"). However, CMJ Azrack primarily, if not exclusively, calculated the amount of LMB's lien by multiplying allowable hours by an appropriate hourly rate. No specific recognition was given to "the terms of the percentage agreement." *Ingber,* 229 A.D.2d at 887, 645 N.Y.S.2d at 920.

■ ] LMB's agreement with Sutton entitled it to 40 percent of any settlement, less retainer payments, and the firm negotiated a settlement of $15,000, an amount that CMJ Azrack regarded as "very favorable." Moreover, the firm urged Sutton to accept that settlement. Had she done so, LMB would have been entitled to *no* additional compensation, since subtraction of the $7,500 retainer payments from $6,000 (40 percent of $15,000) would have yielded a negative number.

■ A charging lien, although originating at common law, *see Itar-Tass,* 140 F.3d at 449 (citing *Goodrich v. McDonald,* 112 N.Y. 157, 163, 19 N.E. 649 (1889)), is equitable in nature, *see In re Rosenman & Colin,* 850 F.2d 57, 60 (2d Cir.1988); *In re King,* 168 N.Y. 53, 58–59, 60 N.E. 1054, 1056 (1901), and the overriding criterion for determining the amount of a charging lien is that it be "fair," *Cohen v. Grainger,*

*Tesoriero, & Bell,* 81 N.Y.2d 655, 658, 602 N.Y.S.2d 788, 790, 622 N.E.2d 288 (1993). There is nothing "fair" about requiring a *pro se* litigant to be subjected to a charging lien for more than $10,000 in favor of the former law firm that urged her to accept a settlement that would have netted it nothing under its retainer agreement.

Under all the circumstances, we conclude that the charging lien should be vacated, Sutton should remain liable to reimburse LMB for its expenses of $544.54, and that Sutton's claim for return of her retainer payments should be denied.

### Conclusion

Accordingly, the judgment of the District Court, including the antecedent rulings of CMJ Azrack, are affirmed in part and vacated in part, and the case is remanded to the District Court for entry of judgment consistent with this opinion.