Gleizer v. Republic of Argentina

# United States Court of Appeals
## for the Second Circuit

AUGUST TERM, 2019

Argued: March 19, 2020
Decided, June 18, 2020

Docket No. 19-595

HERNAN LOPEZ FONTANA, MARIANA MORI DE LOPEZ,

*Plaintiffs-Appellees,*

—v.—

REPUBLIC OF ARGENTINA,

*Defendant-Appellee,*

—v.—

GUILLERMO GLEIZER,

*Movant-Appellant.*

Appeal from the United States District Court
for the Southern District of New York (Preska, *J.*)
No. 1:03-cv-08531

Before: KATZMANN, *Chief Judge*, WESLEY and PARK, *Circuit Judges*.

Movant-appellant Guillermo Gleizer brought an action on behalf of plaintiffs to recover money owed on defaulted Argentine bonds. That action resulted in a judgment for plaintiffs in 2006, which went unpaid until plaintiffs settled their claims with Argentina in 2016, without Gleizer's involvement. Gleizer then moved to enforce his attorney's lien on the settlement proceeds pursuant to New York Judiciary Law § 475. The district court (Preska, *J.*) denied Gleizer's motion on the ground that he had not participated in the 2016 settlement. We conclude that the district court had jurisdiction over Gleizer's claim against Argentina under the commercial activity exception of the Foreign Sovereign Immunity Act. We further conclude that Gleizer's lien on his clients' cause of action attached to the settlement proceeds even though he was not involved in the settlement. We therefore **VACATE** the order of the district court and **REMAND** for further proceedings consistent with this opinion.

ZACHARY G. MEYER, Sutton Sachs Meyer PLLC, New York, NY, *for Movant-Appellant*.

MARIANA MORI DE LOPEZ, *pro se*, Tierra del Fuego, Argentina.

RAHUL MUKHI (Carmine D. Boccuzzi, Jr., *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee*.

KATZMANN, Chief Judge:

In this case, we consider in principal part whether the Foreign Sovereign Immunities Act ("FSIA") bars enforcement of New York Judiciary Law § 475 against the Republic of Argentina, and whether an attorney who secured a judgment for plaintiffs in Argentine bond litigation retains a lien, pursuant to New York Judiciary Law § 475, in the proceeds of a subsequent settlement used

to satisfy that judgment, where the settlement was offered universally to bondholders and the attorney did not participate in the settlement process.

Movant-appellant Guillermo Gleizer represented plaintiffs-appellees Hernan Lopez Fontana and Mariana Mori de Lopez in litigation against the Republic of Argentina relating to defaulted Argentine bonds. Although judgment was entered for plaintiffs in 2006, plaintiffs ultimately settled their claims with Argentina in 2016 without Gleizer's involvement.[1] Almost three years later, Gleizer moved in the district court for an award of attorney's fees jointly and severally against both plaintiffs and Argentina, arguing that he had a lien on the settlement proceeds by operation of New York Judiciary Law § 475. The district court denied Gleizer's motion, as well as his subsequent motion for reconsideration, reasoning in both orders that, because Gleizer did not participate in the settlement, he was not entitled to a lien on the settlement proceeds.

Although the district court did not address foreign sovereign immunity, we conclude that Gleizer's claim against Argentina falls within the commercial

---

[1] It appears that plaintiff Fontana died some years prior to the settlement at issue. We nevertheless refer to "plaintiffs" in this opinion for the sake of consistency.

activity exception of the FSIA. Argentina's settlement with plaintiffs constitutes an "act outside the territory of the United States in connection with a commercial activity of [Argentina] elsewhere." 28 U.S.C. § 1605(a)(2). And that act caused "a direct effect in the United States," *id.*, because it ended long-running litigation in New York. *See Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir. 2016).

Proceeding to the merits of Gleizer's claim, we hold that the enforceability of an attorney's lien against the proceeds of a settlement does not turn on whether the attorney personally participated in the settlement negotiations. Rather, as the plain text of Judiciary Law § 475 indicates and New York caselaw confirms, an attorney "has a lien upon his or her client's cause of action" that "attaches to" a subsequent settlement or judgment, and "the lien cannot be affected by any settlement between the parties." N.Y. Jud. L. § 475; *see also Sargent v. N.Y. Cent. & Hudson River R. R. Co.*, 209 N.Y. 360, 365 (1913) (holding that an attorney's estate was entitled to a lien on a settlement even though the attorney died before the settlement was negotiated).[2] We therefore vacate the

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, and citations.

district court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

In 1994, Argentina issued bonds pursuant to a Fiscal Agency Agreement ("FAA"). *See Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 827 (2d Cir. 2019). Plaintiffs, citizens and residents of Argentina, acquired bonds issued under the FAA, but in 2001 the Republic defaulted.[3] *Id.* In 2003, plaintiffs, represented by Gleizer, commenced this suit to recover the unpaid amount owed on the bonds. The district court entered judgment for plaintiffs in 2006 in the amount of $696,385.14.

The case then lay almost dormant until 2016, when Argentina issued a settlement proposal (or "Propuesta") to all owners of the defaulted bonds. Under the terms of the Propuesta, bondholders could release their claims against the Republic in exchange for payment in amounts specified by a Master Settlement Agreement ("MSA"). *See Attestor*, 940 F.3d at 828. Pursuant to the MSA, on

---

[3] The history of the extensive litigation following Argentina's default is well-known in this Circuit and will not be recounted in detail. *See, e.g., NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 251–56 (2d Cir. 2012).

February 8, 2016, plaintiff Mori de Lopez, acting for herself and as executor of Fontana's estate, agreed to accept $690,000 in satisfaction of the existing judgment.

On November 6, 2018, counsel for Argentina asked the district court to "dismiss" the claims in this case because the judgment had been satisfied. Ltr. Dated Nov. 6, 2018 1–2, Dist. Ct. Dkt. No. 69. Gleizer then moved the court for an order granting him attorneys' fees of $207,000 "jointly and severally" against both plaintiffs and Argentina, based on their "violation of New York Judiciary Law § 475." Proposed Order to Show Cause 1, Dist. Ct. Dkt. No. 72. Gleizer also sought a preliminary injunction to prevent Argentina from filing a Satisfaction of Judgment so "as to not prejudice the rights of co-plaintiff Hernan Lopez Fontana," *Id*. at 2, apparently unaware that Fontana had passed away. The district court denied Gleizer's request for injunctive relief as moot and without prejudice to a further application for fees. Order Dated Nov. 14, 2018, Dist. Ct. Dkt. No. 73. The court then entered the satisfaction of judgment on November 14 and dismissed plaintiffs' claims against Argentina, while clarifying that it "retain[ed] jurisdiction . . . to adjudicate collateral matters in this action such as

6

attorneys' fees." Order of Satisfaction of Judgment and Dismissal, Dist. Ct. Dkt. No. 74.

Gleizer renewed his motion for fees, arguing that he was entitled to 30% of the settlement proceeds under the terms of his retainer agreement. Mem. of Law in Supp. of Attorneys' Fee Award, Dist. Ct. Dkt. No. 78. Gleizer asserted that, after the Propuesta was issued in 2016, plaintiffs "became non-responsive" and Gleizer began to suspect that they "had accepted the Bond Settlement Payment from Argentina, to the exclusion of Gleizer's rights under the Engagement Letter." Gleizer Decl. 4 ¶ 10, Dist. Ct. Dkt. No. 77. And because Argentina had "intentional[ly] circumvent[ed]" Gleizer's attorney's lien, Gleizer claimed that the Republic was jointly and severally liable. *Id.* at 10 ¶ 32, 11 ¶ 37. In response, Argentina argued that the primary responsibility to pay Gleizer lay with plaintiffs; that Gleizer's motion was untimely under both state and federal law; that Gleizer had no lien upon the settlement proceeds because he did not help secure the settlement; and that Gleizer's claim against the Republic was barred by sovereign immunity. Mem. of Law in Opp. 6–16, Dist. Ct. Dkt. No. 83.[4]

---

[4] Plaintiff Mori de Lopez did not participate in the dispute over fees in the district court, nor has she participated in the appeal to this Court.

The district court denied Gleizer's motion. After observing that "[an] attorney's lien applies only to proceeds created through the attorney's efforts," the court concluded that Gleizer did not have a lien on the settlement proceeds because the Propuesta was a universal offer to all bondholders and was not the result of Gleizer's advocacy. *Fontana v. Republic of Argentina*, No. 03 Civ. 08531 (LAP), 2019 WL 8112476, at *1 (S.D.N.Y. Jan. 9, 2019) (quoting *Oppenheim v. Pemberton*, 164 A.D.2d 430, 433 (3d Dep't 1990)). Since Gleizer's "efforts were not determinative" in securing the settlement, *id.* at *2, no lien attached.[5] The court did not address Argentina's alternative argument that sovereign immunity barred this claim.

Gleizer moved for reconsideration, arguing primarily that the court's ruling was inconsistent with its ruling as to fees in related litigation and that an attorney's lien under § 475 attaches to a subsequent settlement regardless of whether the attorney's efforts were "determinative" in producing that settlement. Mem. of Law in Supp. of Mot. for Reconsideration 5–16, Dist. Ct. Dkt. No. 91. He also claimed that the court failed to address his argument that

---

[5] The district court also denied Gleizer's request that Argentina be ordered to produce an unredacted copy of the executed MSA. *Fontana*, 2019 WL 8112476, at *2. Gleizer does not challenge this ruling on appeal.

plaintiffs had breached their contract with him by settling the case without his involvement. *Id.* at 23. The district court denied reconsideration, adhering to its original determination that, because Gleizer's efforts had not produced the settlement, he could not have a lien on the proceeds of that settlement. *Fontana v. Republic of Argentina*, No. 03 Civ. 08531 (LAP), 2019 WL 8112479, at *2–4 (S.D.N.Y. Feb. 28, 2019).

This appeal followed.

## DISCUSSION

### I.    Standard of Review

We review *de novo* whether subject-matter jurisdiction over a claim against a foreign sovereign is barred by sovereign immunity. *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012). Likewise, "the interpretation of a state statute[ is] a question of law that we review de novo." *Eberhard v. Marcu*, 530 F.3d 122, 129 n.3 (2d Cir. 2008).

### II.    Sovereign Immunity

Although the parties and the district court focused on the merits of Gleizer's § 475 claim, "we proceed, as we must, first to determine issues of subject matter jurisdiction." *Rogers*, 673 F.3d at 137. The Foreign Sovereign

9

Immunities Act "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). "Under the FSIA, foreign governments are presumptively immune from suit." *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 766 (2019). The party challenging the immunity of a foreign state "has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the . . . foreign sovereign." *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007).

Gleizer argues that his claim falls within the FSIA's commercial activity exception, *see* 28 U.S.C. § 1605(a)(2), and waiver exception, *see* 28 U.S.C. § 1605(a)(1). Because we agree with Gleizer that the commercial activity exception applies, we do not reach his arguments regarding waiver.

Sovereign immunity does not apply where "the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C.

10

§ 1605(a)(2). Although Gleizer suggests that the first clause may apply, he does not explain what commercial activity Argentina is alleged to have "carried on *in the United States,*" *id.* (emphasis added). We therefore focus on the third clause.

The "act" upon which Gleizer's present claim is "based" is Argentina's settlement with plaintiffs. Both parties agree that this act occurred in Argentina and therefore "outside the territory of the United States." And Argentina does not dispute that this settlement was made "in connection with" its commercial activities. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 615–17 (1992) (holding that Argentina's issuance of bonds constitutes a commercial activity within the meaning of the FSIA); *see also Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 559 (S.D.N.Y. 2001) ("[I]nitiation and settlement of commercial litigation may be a 'commercial activity' within the meaning of the statute."). Argentina argues, however, that the settlement did not cause a direct effect in the United States. We disagree.

The settlement at issue was made "in full discharge and satisfaction" of the underlying judgment that had been obtained in the proceedings below. App'x 36. The settlement therefore ended litigation in the United States and altered the legal rights and relations of the parties to that litigation. Moreover, the MSA

11

"authorize[d]" Argentina to ask the court that the proceedings be "withdrawn, dismissed and discontinued with prejudice." App'x 37. Argentina did just that, securing the order of dismissal contemplated by the MSA. "[A] breach of a contractual duty causes a direct effect in the United States sufficient to confer FSIA jurisdiction so long as the United States is the place of performance for the breached duty." *Atlantica Holdings*, 813 F.3d at 108–09. Similarly, the performance of a contractual obligation in the United States—here, through the dismissal of litigation—causes a direct effect in the United States. And although Argentina suggests that we may not rely upon the dismissal of the underlying lawsuit to find a direct effect because "Gleizer's claims are not 'based upon' this element of the settlement," Br. for Appellee 41 n.23, we have expressly rejected the argument "that the plaintiff's claims must be based upon the act's domestic effect." *Atlantica Holdings*, 813 F.3d at 111. Rather, "an FSIA plaintiff need only show a direct effect on someone in the United States, plaintiff or not." *Id.*

In short, Argentina's settlement with plaintiffs ended a long-running lawsuit in the United States and altered the legal rights and relationships of the

12

parties to that lawsuit. That qualifies as a direct effect in the United States.[6] We therefore hold that Gleizer's claim against Argentina falls within the commercial activity exception of the FSIA and is therefore not barred by sovereign immunity. We proceed to consider the merits of his claim.

### III.    The Attorney's Lien

Under New York law, "[f]rom the commencement of an action, . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, . . . settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination." N.Y. Jud. L. § 475. The district court concluded that Gleizer had

---

[6] Gleizer contends that Argentina also caused a direct effect in the United States because he, a United States resident, was financially injured when Argentina made its settlement payment to plaintiffs without retaining the amount of his lien. Argentina argues in response that the harm to Gleizer did not follow directly from the settlement—rather, his harm was caused by plaintiffs' failure to pay him. Because there is no question that the dismissal of the underlying lawsuit followed directly from the MSA, which constitutes a direct effect in the United States, we need not reach this alternate theory.

no lien upon the settlement proceeds here because the Propuesta was a universal offer to bondholders and therefore did not result from Gleizer's efforts.

The district court erred in concluding that Gleizer had no lien upon the settlement proceeds. The New York Court of Appeals has repeatedly held that an attorney's lien attaches to a settlement made without the attorney's knowledge, even where the attorney withdrew prior to the negotiation of that settlement. In *Fischer-Hansen*, for example, the defendant in a personal injury action settled with the plaintiff without the participation of the plaintiff's attorney. 173 N.Y. at 499. The attorney then sued to enforce his lien upon the settlement proceeds. *Id.* The Court of Appeals—construing the predecessor statute to § 475—held that "a lien upon a claim or a cause of action follows the fund created by a settlement of the claim. . . . It attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter and must stand the consequences." *Id.* at 502.

Similarly, in *Sargent v. New York Central & Hudson River Railroad Company*, 209 N.Y. 360 (1913), an attorney brought a personal injury action on behalf of a railroad employee. *Id.* at 362. The attorney then died, and the railroad company

14

subsequently settled with the plaintiff. *Id.* at 363. The Court of Appeals held—construing the then recently-enacted § 475—that the attorney's estate was entitled to enforce his lien against the settlement proceeds, notwithstanding that he had played no part in the settlement. *Id.* at 365. More recently, the Court confronted a similar issue in *Klein v. Eubank*, 87 N.Y.2d 459 (1996). There, the plaintiff's attorney withdrew 13 months prior to settlement. *Id.* at 461. The Court of Appeals once again held that the attorney's lien applied to the settlement. *Id.* at 462.

New York law therefore unambiguously holds that an attorney's lien, once attached to the client's cause of action, also attaches to a subsequent settlement, whether or not the attorney is involved in the settlement itself. These holdings by the New York Court of Appeals merely confirm the plain import of the statutory language, which specifically provides that "the lien cannot be affected by any settlement between the parties." N.Y. Jud. L. § 475. Indeed, we have previously recognized this rule, noting "that where a defendant settles with a plaintiff without making provision for the fee of the plaintiff's attorney, that attorney can in a proper case proceed directly against the defendant pursuant to section 475." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991).

The cases relied on by the district court are not to the contrary. The district court placed great emphasis on the rule that "the attorney's lien applies 'only to proceeds created through the attorney's efforts.'" *Fontana*, 2019 WL 8112476, at *1 (quoting *Oppenheim v. Pemberton*, 164 A.D.2d 430, 433 (3d Dep't 1990)). We respectfully disagree with the able district court in its interpretation of that language. In *Oppenheim*, the attorneys were discharged prior to settlement and subsequently attempted to enforce their lien against certain real property. 164 A.D.2d at 431–32. The Appellate Division, Third Department, held that the lien could not be enforced against this property because the clients had not acquired the property in the settlement; they acquired only an interest in its conveyance. *Id.* at 433. *Oppenheim* therefore stands for the unremarkable proposition that the attorney's lien may be enforced only against the actual proceeds of a settlement.[7]

---

[7] The other cases relied on by the district court are similarly distinguishable. In *Goldstein, Goldman, Kessler & Underberg v. 4000 East River Road Associates*, 64 A.D.2d 484 (4th Dep't 1978), the court held that a prospective reduction on tax payments did not constitute "proceeds" within the meaning of § 475. *Id.* at 488–89. That rule has no bearing in this case. And in *Max E. Greenberg, Cantor & Reiss v. State*, 128 A.D.2d 939 (3d Dep't 1987), the court held that the attorney in a state proceeding had no lien on the recovery from a federal proceeding on the same cause of action. *Id.* at 939–40. But that case was overruled by *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655 (1993), in which the Court of Appeals held that an attorney's lien "attaches to the recovery . . . even if recovery

Argentina argues that, even if a lien exists, it may not be enforced against the Republic. A lien may be enforced against a defendant, according to Argentina, only where the defendant "either still possesses the proceeds or . . . has knowingly paid the proceeds to the client so as to deprive the attorney of an earned fee." Br. for Appellee 27–28 (quoting *Kaplan v. Reuss*, 113 A.D.2d 184, 186–87 (2d Dep't 1985)). Although we acknowledge that this formulation appears in cases from intermediate appellate courts in New York, *e.g.*, *Kaplan*, 113 A.D.2d at 186–87; *Haser v. Haser*, 271 A.D.2d 253, 255 (1st Dep't 2000), the Court of Appeals has definitively held that a showing of malice is not required. Rather, even where a defendant settles "in good faith and in the belief that . . . no lien thereafter existed," *Sargent*, 209 N.Y. at 363, the attorney may enforce his lien against a defendant who failed to provide for the attorney's fee, *id.* at 365; *see also Fischer-Hansen*, 173 N.Y. at 501 (holding that even though settlement "was made in good

is obtained in an action different from the one in which the services were rendered." *Id.* at 657–58. In any event, even if these cases were on point, they cannot overcome the clear holdings of *Fischer-Hansen*, *Sargent*, and *Klein*.

faith," the defendant "paid at its peril" because "its duty was to ascertain the amount [owed to the plaintiff's attorney] and retain it for him").[8]

Argentina argues in the alternative that Gleizer was, at a minimum, required to proceed against plaintiffs first before attempting to collect from Argentina. Assuming without deciding that Argentina is correct that, as a general matter, attorneys must first attempt to collect from their clients before proceeding against the defendant, we are satisfied that the circumstances of this case permit Gleizer to assert his claim against Argentina and plaintiffs simultaneously. The New York Court of Appeals has held that, when the client

---

[8] While some cases may suggest that only a defendant "having knowledge of an attorney's lien" may be liable under § 475, *e.g.*, *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 188 (1st Dep't 2002), the New York Court of Appeals has stated that no notice is required to enforce an attorney's lien because "it is generally regarded as an equitable assignment to the attorney of the fund procured by his efforts to the extent of the amount of his lien." *In re City of New York*, 5 N.Y.2d 300, 307 (1959); *Peri v. New York Cent. & H.R.R. Co.*, 152 N.Y. 521, 528 (1897) (observing that "no notice was required" in order to enforce an attorney's lien against the defendant under the predecessor statute to § 475); *see also Brooks v. Mandel-Witte Co.*, 54 F.2d 992, 994 (2d Cir. 1932) ("[I]f the lien exists, it is statutory and notice thereof is not required to be given."). In any event, there is no dispute that Argentina received sufficient notice here. Gleizer moved in 2010 for an order fixing the amount of his attorney's lien. *See* Order to Show Cause 5, Dist. Ct. Dkt. No. 60. Argentina thus had actual notice, years prior to the instant fee dispute, that Gleizer might be entitled to a lien on the proceeds of any settlement.

has returned to their foreign country of residence, the attorney may proceed directly against the defendant to enforce an attorney's lien. *See Fischer-Hansen*, 173 N.Y. at 493-94; *Peri v. New York Cent. & Hudson Riv. R.R. Co.*, 152 N.Y. 521, 528 (1897); *see also Chesley*, 927 F.2d at 68 (observing that "the [Court of Appeals in *Fischer-Hansen*] allowed the attorney to proceed directly against the defendant" where "the plaintiff [had] received the settlement fund and left the country"). Indeed, the fact that plaintiffs failed to respond to Gleizer's motion for fees suggests that he will have difficulty collecting from them, even if he does obtain a favorable judgment. We therefore see no barrier to his proceeding against Argentina at this time.

In short, Gleizer's lien attached to the settlement proceeds, even though the settlement was made without his involvement, and Argentina's arguments that it should not be held liable are unpersuasive. We therefore vacate the order of the district court and remand for further proceedings consistent with this opinion.

## IV. Remaining Issues

We briefly address several additional issues that the district court may wish to consider upon remand.

*First*, Gleizer's motion may have been untimely under New York law.[9]

"[T]he right to enforce [an attorney's lien] will be waived by any action inconsistent with an intent to enforce the lien," including "fail[ing] to enforce the lien within a reasonable time." *Kaplan v. Reuss*, 113 A.D.2d 184, 187 (2d Dep't 1985), *aff'd*, 68 N.Y.2d 693 (1986). A dilatory attorney is therefore "relegated to a plenary action against the client for any fees." *Id.* The record is not sufficiently developed for us to determine whether Gleizer unreasonably delayed in bringing his motion. Gleizer was undoubtedly aware of the Propuesta when it issued in 2016, and he admitted in the proceedings below that he suspected plaintiffs

---

[9] We note that, contrary to Argentina's argument, Gleizer's motion was timely as a matter of federal procedural law. Federal Rule of Civil Procedure 54(d)(2)(B)(i) requires that a motion for attorney's fees be filed within 14 days of the entry of judgment, but "judgment" is defined by Rule 54(a) to include "any order from which an appeal lies." The district court's Order of Satisfaction of Judgment and Dismissal, Dist. Ct. Dkt. No. 74, dismissed all claims against Argentina with prejudice. Such an order is appealable, even if it results from settlement. *See Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 110–13 (1st Cir. 2007) (finding appealable district court order that dismissed all claims following payment of settlement amount into court registry); *see also* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3914.6 (2d ed.) ("The fact that dismissal rests on a settlement does not destroy finality."); *id.* at 15B § 3914.29 ("A judgment disposing of all claims among all parties is final, whether part or all of it rests on settlement."). And because the district court's November 14, 2018 Order of Satisfaction of Judgment and Dismissal was appealable, Gleizer's motion, filed on November 26, was timely.

20

might have accepted the offer, *see* Gleizer Decl. 4 ¶ 10, Dist. Ct. Dkt. No. 77, yet

he did not bring a motion to enforce the lien for more than two years. We leave it

to the district court to determine whether Gleizer made reasonable efforts to

enforce his lien, including what steps, if any, he took to ascertain whether

plaintiffs had accepted the MSA.

*Second*, Gleizer argues that the district court erred in declining to consider

his argument that plaintiffs' breached their engagement agreement with him.

Gleizer first raised this argument, however, in his motion for reconsideration.

Gleizer contends that a passing reference to "repudiation" in his original motion,

Mem. of Law in Supp. of Attorneys' Fee Award 8, Dist. Ct. Dkt. No. 78, should

have alerted the district court that he intended to raise a breach of contract claim.

We disagree. Because the claim was not properly presented in Gleizer's initial

motion, the district court did not err by refraining from ruling on it or by

declining to grant reconsideration on that basis. Nonetheless, in the interest of

judicial economy, the district court may wish to consider on remand whether

entertaining this claim would be an appropriate exercise of its supplemental

jurisdiction. *Cf. Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442,

448 (2d Cir. 1998).

*Third*, the district court may wish to consider whether, as Gleizer argued below, plaintiffs have defaulted by failing to timely respond to his motion for fees.

## CONCLUSION

For the foregoing reasons, we **VACATE** the order of the district court and **REMAND** for further proceedings consistent with this opinion.